UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN ZELENIKA, NICHOLAS CAPORELLI, and CHARLES RANEY | ) ) ) | |
| Plaintiff, | ) ) | No. 09 CV 2946 |
| v. | ) ) | Judge Pallmeyer |
| COMMONWEALTH EDISON, AN EXELON CORPORATION. | ) ) ) | Magistrate Judge Valdez |
| Defendant. | ) ) | |

PLAINTIFF'S RULE 56.1(a)(3) STATEMENT
OF UNDISPUTED MATERIAL FACTS

Plaintiffs submit the following Statement of Undisputed Material Facts in support of Plaintiffs' Motion for Summary Judgment pursuant to Local Rule 56.1(b)(3), as follows:

I.
JURISDICTION, VENUE AND PARTIES

1.     The named Plaintiffs each worked for Defendants Commonwealth Edison, an Exelon Corporation (collectively, "ComEd"), as "Load Dispatchers." (Ex. A - Defendant's Answer to Plaintiff's Fourth Amended Complaint, at ¶¶ 1, 2, 3, 7, 8).

2.     The job title "Load Dispatcher" is synonymous with Senior Distribution System Dispatcher. (Ex. B - Pinto Deposition, pages 88-89).

3.     The opt-in Plaintiffs to this action were all previously employed by ComEd under the titles Load Dispatcher, Operating Dispatcher, Senior Dispatcher, Distribution System Dispatcher I or II, or Senior Distribution System Dispatcher. (*See* Ex. A, at ¶ 10).

## II.
## DISPATCHER CLASSIFICATIONS

4.      In the 2005-2008 timeframe, ComEd employed over one hundred employees under several "dispatcher" titles. (Ex. B, page 87; *see* Ex. C - Peretti Deposition, page 67; Ex. D –List of Dispatches who worked at ComEd from 2006-2009, as identified by Defendants and as provided by Defendants in discovery).

5.      In or prior to 2000 or 2001, dispatchers had titles of "Load Dispatcher" or Operating Dispatcher." (Ex. B, page 89).

6.      At some point in or after 2000, the titles of Load Dispatcher and Operating Dispatcher became "Senior Dispatcher" and "Dispatcher" (Pinto Deposition, page 88, line22-page 89), and later were changed again to "Senior Distribution Systems Dispatcher" and "Distribution System Dispatcher II." (Ex. C, pages 10-11).

7.      The difference between Operating Dispatchers and Load Dispatchers (or Senior Distribution Systems Dispatchers and Distribution System Dispatcher II's) relates to the amount of voltage involved in the equipment each title is assigned to work with. (Ex. B, page 90).

8.      Load Dispatchers are assigned to higher voltage areas and equipment, including high voltage substations, lines, and switches, while Operating Dispatchers work with 4 and 12 kV lines and equipment outside of a substation. (Ex. B, page 90).

9.      Operating Dispatchers, Load Dispatchers, Senior Distribution Systems Dispatchers, or Distribution Systems Dispatchers I or II's (collectively "Dispatchers"), generally performed the same or similar job duties and responsibilities with the difference in their jobs being the voltage involved in their area of jurisdiction. (Ex. B, page 90).

10.     Distribution System Dispatcher I positions were created in approximately 2008 (Ex. B, page 88), for situations involving "simple outages, transformer-level outages." (Ex. C, page 11, lines 8).

11.     Dispatchers under each of the dispatcher job titles are not required to have a specific academic degree or specific technical training so long as they have some field experience. (Ex. C, page 82; see Ex. E – Job Descriptions, J0001-J0004).

### III.
### DISPATCHERS' DUTIES AND RESPONSIBILITIES

12.     Dispatchers' jobs involve receiving information that maintenance or repairs need to be made to ComEd's electricity grid, lines and equipment and working with field personnel to perform such maintenance and repairs. (Ex. F - Zelenika Deposition, page 198).

13.     Dispatchers are notified of field personnel able to perform the necessary work. (Ex. F, page 198).

14.     Once field personnel are identified as able to perform the necessary maintenance or repairs, Dispatchers communicate information about ComEd's electricity grid and equipment schematics from ComEd's "SCADA system" to assist the field personnel. (Ex. C, page 53).

15.     In the case of scheduled work or emergent work, a Dispatcher is to go through "routines" together with the field personnel using "three-way communication" to ensure the field personnel understand the procedure. (Ex. C, page 62- 63).

16.     Three-way communication is a specific system ComEd implemented to require a Dispatcher to read a step-by-step routine to the field personnel and which the

field personnel would repeat back each step of the routine to the Dispatcher. (Ex. F, pages 215-216).

17.     The Dispatcher documents whether the field conditions match the specifications in the routine and the field personnel act as the Dispatchers "eyes and ears in the field" to ensure that the conditions match information contained in the SCADA system and match the routine. (*Id.*; *see* Ex. G – Ransom Deposition, page 30).

18.     ComEd requires its Dispatchers and field personnel to agree to exactly each step of the routine before the work can be performed. (Ex. G, pages 28-29).

19.     ComEd requires the field personnel to repeat back each step of the routine to make sure that there is no confusion so that no one gets hurt. (Ex. G, page 30).

20.     Routines are written standardized operating procedures created by non-Dispatcher employees, including Arrangers and Senior Arrangers. (Ex. C, pages 45-46).

21.     Dispatchers read and review the steps of a routine with the field personnel to ensure that each understands the steps. (Ex. F, pages 215-216).

22.     Dispatchers communicate with field personnel to confirm that the situation on the SCADA system is in fact what the field personnel is observing in the field. (Ex. C, pages 53-54; Ex. F, pages 215-216).

23.     The field personnel must confirm that the field conditions are the same as what the SCADA system is showing. (Ex. C, pages 53-54).

24.     As work is completed, the field personnel "check-off" steps by reading them back to the Dispatcher to insure the work is done properly. (Ex. C, page 62; Ex. F, pages 215-216).

25.     Prior to work being performed, the field personnel read back to the Dispatcher the steps to ensure that each necessary step is understood.  (Ex. C, page 62).

26.     If the Dispatcher and the field personnel have a difference of opinion on what or how maintenance or repairs are to be performed, and they are unable to resolve their disagreement, the Dispatcher is expected to involve a Shift Manager and the field personnel is supposed to involve a supervisor.  (Ex. C, page 55; Ex. G, page 27).

27.     The Shift Manager is the management personnel who give specific instructions to Dispatchers on what procedures or routines to follow.  (Ex. G, page 20).

28.     The number of written routines and standard operating procedures have increased considerably since 2000.  (Ex. B, page 91).

29.     Dispatchers are expected to be aware of standard operating procedures to be implemented in non-scheduled emergency situations, such as dealing with outages or when personnel are in danger.  (Ex. C, page 51; Ex. H - Goetz Deposition, page 21).

30.     Written routines and procedures serve as "high-level guidance" when a Dispatcher works with field personnel to solve emergencies such as outages.  (Ex. B, page 91).

31.     Dispatchers are required to strictly follow established procedures, and ComEd actually made it part of company protocol that "there is no power high enough to violate procedure."  (Ex. H, pages 29-30).

32.     As part of their duties, Dispatchers also document changes to the system and system outages.  (*See* Ex. F, page 219).

## IV.
## DISPATCHERS' LACK OF AUTHORITY

33.     Dispatchers do not use independent discretion or judgment in performing their jobs.  (Ex. F, page 233-235).

34.     Dispatchers cannot hire employees.  (Ex. B, page 92; Ex. C, page 60; Ex. F, page 277; Ex. G, page 26).

35.     Dispatchers do not have the ability to terminate other employees.  (Ex. B, page 92; Ex. C, page 60; Ex. F, page 277; Ex. G, page 26).

36.     Dispatchers cannot discipline other employees.  (Ex. B, page 92; Ex. F, page 277; Ex. G, page 26).

37.     Dispatchers cannot grant or deny benefits to another employee.  (Ex. B, page 96).

38.     Dispatchers do not have the authority to negotiate or make contracts for ComEd.  (Ex. C, pages 80-81).

39.     Dispatchers do not have authority to formulate policies for ComEd.  (Ex. C, page 80).

40.     Dispatchers do not have any employees report to them directly.  (Ex. C, pages 82-83).

41.     Dispatchers cannot set their own hours.  (Ex. B, page 97).

42.     Dispatchers do not have the authority to implement operating procedures. (Ex. C, page 80).

43.     Dispatchers do not have the authority to deviate from established ComEd procedures.  (Ex. C, page 80).

44.    Dispatchers do not have the ability to compel other employees to stay late to perform work.  (Ex. C, pages 58, 60; Ex. F, page 277; Ex. G, page 26).

45.    Dispatchers do not have the authority to tell other employees when or how to do their work.  (Ex. F, page 277-278).

## V.
## COMED CHANGES DISPATCHER TITLES

46.    Although Dispatchers' titles have changed to Senior Distribution Dispatcher and Distribution System Dispatcher I and II since 2001, ComEd managers and supervisors still refer to Dispatchers as "Operating Dispatchers" and "Load Dispatchers" (or "OD's" and "LD's").  (Ex. B, pages 89-90; Ex. C, page 10).

47.    Dispatchers still refer to themselves as Operating Dispatchers and Load Dispatchers.  (Ex. F, page 26).

48.    ComEd did not communicate to Dispatchers that job titles changed in 2000 or 2001, although there was a title change on the employees' performance review forms.  (Ex. F, page 26).

49.    ComEd did not inform Dispatchers of any changes to their job descriptions when new titles were implemented.  (Ex. B, page 86).

50.    When ComEd changed the job titles, it did not change the Dispatchers' duties, authority or responsibility.  (Ex. B, page 86).

51.    Dispatchers were never given greater authority after the title changes were implemented – if anything, Dispatchers' duties and responsibilities lessened after ComEd changed Plaintiffs' job titles.  (Ex. C, page 26; Ex. F, page 275).

## VI.
## COMED CHANGES DISPATCHER OVERTIME COMPENSATION POLICY

52.     Dispatchers were compensated according to the number of hours they worked, and the rate of pay for overtime hours worked were reflected on their paychecks or stubs.  (Ex. G, page 80; Ex. C, pages 83-84; Ex. E, page 11; Ex. F, pages 272-273)

53.     Prior to 2001 ComEd compensated Dispatchers at one and one-half times or double-time for hours worked in excess of forty in a workweek.  (Ex. B, pages 13-14, 86; Ex. F, pages 272-273).

54.     In late 2000 or 2001, ComEd decreased the rate of pay to Dispatchers for overtime from "time and a half" to only the normal hourly rate.  (Ex. B, page 14; Ex. F, pages 272-273).

55.     ComEd's overtime policy change occurred during the same timeframe that ComEd designated new Dispatcher titles.  (Ex. B, page 14).

56.     Dispatchers' duties, responsibilities and authority did not change when overtime pay was removed.  (Ex. B, page 86).

57.     ComEd's overtime policy of compensating Dispatchers at straight time versus time and a half applied to all Dispatchers in the same way.  (Ex. B, page 98).

58.     ComEd routinely required Dispatchers to work more than forty hours in a workweek, including as much or more than 24 consecutive hours at a time.  (Ex. C, pages 83-84; Ex. E, page 11; Ex. F, page 261; Ex. G, 80).

59.     Dispatchers are not allowed any scheduled breaks.  (Ex. F, page 49).

60.     Dispatchers are required to eat lunch at their desk while they continue to work.  (Ex. B, page 79-80; Ex. C, page 87; Ex. F, pages 49-50).

61.     Dispatchers do not receive rest periods, even though they occasionally work as much or more than 24 consecutive hours.  (Ex. C, page 87; Ex. F, pages 52-53).


Respectfully submitted,

By:     /s/  Keith L. Hunt *electronically signed*
        Attorney for Plaintiffs

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza, Suite 2100
Chicago, IL 60602
(312) 558-1300

### CERTIFICATE OF SERVICE

I, Keith Hunt, certify that I caused a copy of the foregoing Plaintiffs' Rule 56.1

(a)(3) Statement of Material Facts was filed and served electronically through the Court's

CM/ECF Electronic Filing System and associated e-mail system on all counsel of record,

as listed below, on November 30, 2011.


J. Stuart Garbutt at stuart.garbutt@mbtlaw.com
Naureen Amjad at naureen.amjad@mbtlaw.com
Meckler Bulger Tilson Marick & Pearson LLP
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606


By: */s/* Keith L. Hunt *electronically filed*
Attorney for Plaintiffs