UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN ZELENIKA, NICHOLAS CAPORELLI and CHARLES RANEY,<br><br>Plaintiffs,<br><br>v.<br><br>COMMONWEALTH EDISON, an Exelon corporation,<br><br>Defendant. | No. 09 CV 2946<br><br>Judge Pallmeyer<br>Magistrate Judge Valdez |

# COMED'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiffs are former Dispatchers for Commonwealth Edison (ComEd) who worked at ComEd's Operations Control Center (OCC) in Joliet, Illinois. Their jobs involved monitoring ComEd's power distribution system and dispatching field crews to troubleshoot customer complaints and carry out planned and emergency maintenance and repairs. Counts I and II of the Complaint[1] seek recoveries of unpaid overtime compensation for Plaintiffs, on the theory that ComEd misclassified its Dispatchers as overtime-exempt employees. The undisputed facts abundantly establish, however, that Plaintiffs—each of whom made more than $100,000 in every relevant year, thereby qualifying as "highly compensated" employees under the FLSA—were properly classified as overtime-exempt.

---

[1] The "Complaint" referred to herein is Plaintiffs' Fourth Amended Complaint (Docket 44), currently before the Court.

Counts III and IV of the Complaint have been dismissed. In Count V, Plaintiff Zelenika contends that ComEd discharged him, after an investigation into the inappropriate use of ComEd computer equipment, not because of his inappropriate use of that equipment but in retaliation for his alleged "whistleblowing" about supposed violations of the Illinois One Day Rest in Seven Act (ODRISA). Again, however, the undisputed facts refute the claim, establishing that the ComEd internal investigator who recommended Zelenika's discharge had no knowledge of any ODRISA complaints that Zelenika might have made but found that Zelenika had participated in flagrant misuse of the ComEd computer systems. No ComEd manager who might have had knowledge of any ODRISA complaints by Zelenika influenced the investigation or decision making that resulted in Zelenika's discharge. Further, no other employee who was found to have committed as serious a breach of ComEd's computer use policies as did Zelenika avoided discharge in that corporate investigation, and the others who were discharged were not whistleblowers.

Accordingly, as set forth more fully below, the undisputed material facts entitle ComEd to judgment as a matter of law on all the claims remaining in the Complaint.

## II. FACTS

The essential uncontroverted facts are set forth in ComEd's accompanying LR 56.1(a)(3) statement, which is referred to herein by paragraph numbers as "SOF ____."

## III. ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial. *Sellers v. City of Gary*, 453 F.3d 848, 850 (7th Cir. 2006) *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2554 (1986). "A complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2554. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Yasak v. Retirement Board of Policemen's Annuity and Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004).

### B. COMED IS ENTITLED TO JUDGMENT ON THE COMPLAINT'S FEDERAL AND STATE OVERTIME CLAIMS

#### 1. Plaintiffs Were Overtime-Exempt Employees

The Complaint alleges overtime pay violations under the Fair Labor Standards Act (FLSA) in Count I, and under the Illinois Minimum Wage Act (IMWA) in Count II. Under either enactment, however, ComEd was not required to pay overtime compensation if Plaintiffs were "employed in a *bona fide* ... administrative ... capacity." 29 USC § 213(a)(i); 820 ILCS 105/4a(2)(E).

To establish that an employee qualifies for the administrative exemption under the FLSA, an employer generally must establish the following:

(1) The employee is compensated on a salary or fee basis at a rate of not less than $455 per week, or $910 in a two-week pay period;

(2) The employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and

(3) The employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

3

29 CFR §§ 541.200(a), 541.600(b). The FLSA, however, imposes a more streamlined test for highly compensated employees. "An employee with total annual compensation of at least $100,000 is deemed exempt under ... the Act if the employee customarily and regularly performs any *one* or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 CFR § 541.601(a) (emphasis added). "Total annual compensation" must include at least $455 per week on a salary or fee basis, but may also include nondiscretionary bonuses and other nondiscretionary compensation earned during the relevant year. 29 CFR § 541.601(b)(1).

### a. *Plaintiffs Are Paid a Salary and Are Highly Compensated*

Plaintiffs clearly are highly compensated because they had total annual incomes exceeding $100,000, including salary and additional compensation for such things as shift differential or working "extended hours," for each year relevant to this claim. SOF 24, 28. An employee is paid on a "salary basis" if he regularly receives, in each pay period, a predetermined salary amount not subject to reduction because of variations in the quality or quantity of work performed. 29 CFR § 541.602. Plaintiffs admit in the Complaint that they were paid "on a salary basis" regardless of their hours worked each work week. SOF 22. Their salary payments amounted to at least $910 in each two-week pay period. SOF 24. Plaintiffs also admit that their salaries were never docked for arriving late to work or leaving work early and that they knew of no other ComEd Dispatcher whose salary was docked under such circumstances. SOF 24-25. That Plaintiffs were paid additional compensation on a "straight time" basis under ComEd's Extended Hours policy when they worked extra shifts (SOF 27) does not change the fact that they were paid on a salary basis. 29 CFR § 541.604(a) ("the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives

4

additional compensation based on hours worked for work beyond the normal work week. Such additional compensation may be paid on any basis [including] straight-time hourly amount ...").

### b. Plaintiffs Perform Office Work Directly Related to ComEd's Business Operations and Exercise Discretion and Independent Judgment

Although ComEd is only required to establish that Plaintiffs—as highly compensated employees—satisfied just one of the "duties" requirements for the FLSA administrative exemption, Plaintiffs clearly satisfied both. It is undisputed that ComEd's Dispatchers all worked in an office setting, performing non-manual work, seated at desks monitoring ComEd's electrical distribution system on computer displays and communicating with customers and field crews by telephone and radio to monitor, maintain and repair the system. SOF 2, 5, 11. This satisfies the requirement that the Plaintiffs' "primary duty [involved] the performance of office or non-manual work" which was "directly related to assisting with the running or servicing of the business." 29 CFR §§ 541.200(a)(2); 541. 201(a). On this basis alone, ComEd is entitled to summary judgment under the highly compensated test as the Dispatchers must be deemed exempt under the FLSA if they "customarily and regularly perform any *one* or more of the exempt duties or responsibilities" of an administrative employee. 29 CFR § 541.602.

Second, the evidence is abundant that the Dispatchers exercise discretion and independent judgment with respect to matters of significance to the company, thereby satisfying the third prong of 29 CFR § 541.200(a). Regardless of specific job title (Sr. DSD, DSDII, etc.), the principal function of all Dispatchers is to coordinate maintenance and repairs in their assigned portions of the ComEd power grid, and to immediately resolve customer complaints and emergencies such as power outages. SOF 12, 14. In doing so, Dispatchers oversee numerous ComEd field crews each shift, directing those crews to appropriate locations and in taking appropriate actions such as to de-energize or re-energize portions of the power

5

distribution system to safely facilitate repairs and restore customer power. SOF 15-19. Plaintiffs acknowledge that they had to be extensively trained by ComEd to carry out these responsibilities and that, when doing so, they served as the "basic overseer" or "coordinator" of their assigned portions of the grid, bearing heavy responsibility for the safety of the field crews, the public, and ComEd's power distribution equipment. SOF 13, 20-21. These duties involve the exercise of judgment and discretion on matters of significance. *See Conroy v. City of Chicago*, 644 F. Supp. 2d 1061, 1068-1069 (N.D. Ill., 2009) (responsibility for responding to "in-the-field emergencies" requires the exercise of discretion in matters of significance).

In *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365 (7th Cir. 2005), the Court found that similar but less demanding duties satisfied the requirements of the administrative exemption, under both federal and Illinois law. That case involved, among others, "Work Planners" at several ComEd generating plants who "spen[t] the majority of their day in an office creating instructions for the maintenance and repair of ComEd's machines." 410 F.3d at 373. The Work Planners also were responsible for advising ComEd management about the best way to handle maintenance and repair problems. *Id.* The court found it clear that the Work Planners—with their problem-solving responsibilities—exercised discretion and independent judgment with respect to matters of significance, noting that they created a set of instructions to "remedy reported problems around the plant." *Id.* at 375. As the District Court also noted in that case, the work plans "allow[] the [electrical system] to continue operating," making Work Planners a "key linchpin in ensuring that ComEd's nuclear plants continue to function safely and reliably." *Kennedy v. Commonwealth Edison Co.*, 2003 WL 21785219, *1, 8 Wage & Hour Cas.2d (BNA) 1777, 1785 (C.D. Ill. 2003) (copy attached).

The Dispatchers in this case work in a similar administrative environment and perform very similar roles but, even more so than the Work Planners in *Kennedy*, also are responsible for giving real-time instructions and approvals to field crews to energize or de-energize equipment in emergency situations, which occur regularly, where their actions could imperil the lives and safety of the crews and the public and where serious damage to the power distribution network could occur. Their decision-making and problem-solving responsibilities in such emergency situations further delineate them as exempt employees. *Conroy v. City of Chicago, supra. See, also,* 29 CFR § 541.202(a) ("the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered").

It is of no moment that in some instances a Dispatcher's decision-making and exercise of judgment may occur in consultation with others, rather than in isolation. 29 CFR § 541.202(c). As the Court observed in *Kennedy*, "the fact that others may review or even reverse [a Plaintiff's] judgment, does not" put the employee outside the administrative exemption. 410 F.3d at 384. Similarly, "[w]hile Plaintiffs' discretion may be channeled by regulations, that [also] does not mean [they] do not exercise independent judgment." *Id. See, also, Mullins v. Target Corp.*, 2011 WL 1399262, *6-7 (N.C. Ill 2011, copy attached); *Marting v. Crawford & Co.*, 2006 WL 681060, *8 (N.D. Ill. 2006, copy attached) (noting that "the Seventh Circuit and other courts have generally given little weight to this type of argument").

Indeed, the fact that Plaintiffs in this case were so highly compensated by ComEd, receiving more than $100,000 in total annual compensation throughout each of the years at issue,[2] is by itself "a strong indication of [their] exempt status, thus eliminating the need for a detailed analysis of [their] job duties." 29 CFR § 541.601(c). As a result, Plaintiffs would meet the requirements for exemption as administrative employees even if the bulk of their duties were non-exempt, as long as they regularly in each workweek performed at least one exempt duty. *See, In re: RBC Dain Rauscher Overtime Litigation*, 703 F. Supp. 2d 910, 943 (D. Minn. 2010); and *Sarviss v. General Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 896 (C.D. Calif. 2009). Given that unplanned power outages and other emergency conditions occur across ComEd's power distribution system more than 100 times a day, on average, it is obvious that the ComEd Dispatchers regularly exercise judgment and discretion in dispatching and directing ComEd field crews when determining how to respond to such problems. ComEd therefore is entitled as a matter of law to summary judgment on Count I.

Similarly, there can be no dispute that Plaintiffs satisfy the administrative exemption requirements under Illinois law. The IMWA applies the "old" FLSA white collar exemption regulations in effect before March 31, 2003 as long as the "new" minimum salary amount is met. 820 ILCS 105/4a(2)(E). As discussed above, the Dispatchers in this case easily satisfy the minimum salary requirement ($910 every two-week pay period) of the "new" FLSA regulations. As a result, for IMWA purposes Plaintiffs were subject to the "short test" of job duties contained in the "old" FLSA regulations. *See, Kennedy, supra,* 410 F.3d at 369. The old FLSA "short

---

[2] The longest limitations period for FLSA and IMWA overtime pay claims is three years. 29 USC § 255(a); 820 ILCS 105/12. The earliest overtime pay claim by the named Plaintiffs in this case was filed in April 2009, and the opt-in Plaintiffs did not join the suit until late 2010. Thus, the farthest back any of the claims can extend is to early 2006.

test" for the administrative exemption is virtually identical to the "new test" except that it did not contain the requirement "as to matters of significance" in the third prong of the test. 29 CFR 541.2(e)(2). As such, for the reasons stated above, the Dispatchers qualified for the administrative exemption under the Illinois Minimum Wage Law also, and Defendant is entitled to summary judgment on Count II as well.

### 2. ComEd Is Entitled To Judgment On The Named Plaintiffs' FLSA Claims Due To Their Failure To File Consents

Named Plaintiffs Zelenika, Caporelli and Raney asserted both FLSA and IMWA claims in the Complaint, but did not file consents to participate in the FLSA claims when the Court directed that such consents be filed. SOF 7. They therefore are barred from pursuing FLSA claims and may pursue only the IMWA overtime claims in Count II. Plaintiffs sought and obtained leave to maintain this case as a collective action under 29 U.S.C. § 216, which provides: "No employee shall be a party plaintiff to any [collective FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court." 29 U.S.C. § 216(b). This requirement applies "even if he is a named plaintiff in the complaint." *Frye v. Baptist Mem. Hosp.*, 2011 WL 1595458 (W.D. Tenn., April 27, 2011, copy attached). Thus, ComEd is entitled to judgment on the named Plaintiffs' claims in Count I.

The opt-in Plaintiffs may pursue the FLSA claims of Count I because they filed consents, but they are not parties to the case for purposes of the IMWA claims in Count II, as the named Plaintiffs did not move to certify a class for Count I purposes under Fed.R.Civ.P. 23.

### C. ZELENIKA CANNOT ESTABLISH ESSENTIAL ELEMENTS OF HIS RETALIATORY DISCHARGE CLAIM

Counts III and IV of the Complaint, in which Zelenika originally contended that he was discharged in violation of the Illinois Whistleblower Act or in retaliation for alleged union

activities, have been dismissed. See, the Court's orders of September 16, 2009 (Docket 25) and February 24, 2010 (Docket 39). In addition, the Court has ruled that Count V, alleging the retaliatory discharge tort under Illinois common law, is viable only insofar as Zelenika alleges that he was discharged for complaining that ComEd violated the meal break provisions of ODRISA. See, the Court's order of June 9, 2010 (Docket 54). The Court has held that Zelenika's allegations that he was discharged in retaliation for complaining about other things that he believes somehow implicated safety are insufficient to state viable claims. Only complaints of the violation of a specific constitutional or statutory provision can establish the retaliatory discharge tort in Illinois. *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 527, 478 N.E.2d 1354, 1357 (1985).

A valid claim of retaliatory discharge requires the employee to establish that he has been (1) discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violated a clear mandate of public policy. *Paris v. Cherry Payment Systems, Inc.,* 265 Ill. App. 3d. 383, 638 N.E.2d 351 (1st Dist. 1994), citing *Hartlein v. Illinois Power Co,* 151 Ill.2d 142, 160, 601 N.E.2d 720 (1992). Zelenika may not merely assert that he was a good worker who complained and then was discharged, requiring ComEd to produce evidence of a legitimate reason for his firing; or asking the Court to infer that his complaints may have contributed. *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010). The indirect, burden-shifting method of proof, common in employment discrimination cases, is not available to a plaintiff in a retaliatory discharge claim under Illinois law. *Id.*; *Clemons v. Mechanical Devices Co.*, 184 Ill.2d 328, 338-39, 704 N.E.2d 403, 407-08 (1998). Instead, Zelenika must prove *directly* that his complaints about ODRISA violations caused his discharge.

Zelenika can prove no such thing. It is irrefutable that ComEd terminated Zelenika's employment after an impartial and thorough investigation revealed that he had distributed an email with a link to a pornographic video to other ComEd employees.

Initially, Zelenika cannot establish that he ever complained about ODRISA violations. SOF 48-50. Indeed, Zelenika appealed his discharge in January 2007 through an internal ComEd peer review process but admits that he did not even contend at his peer review hearing that he was a whistleblower, much less that his discharge was due to his whistleblowing. SOF 53.

In any event, however, Zelenika is unable to prove that complaints about ODRISA meal break violations, if indeed he ever made any such complaints, precipitated his discharge. There can be no dispute that ComEd had a legitimate reason for terminating Zelenika's employment. Exelon policies prohibited ComEd employees[3] from, among other things, using the Company's electronic information systems to access pornographic or illicit websites or to circulate pornographic or illicit materials. SOF 30-33. Zelenika was aware of those policies and, in fact, was warned by ComEd in 1998 about using ComEd's systems to circulate such items. SOF 29. No evidence exists to rebut the simple fact that ComEd terminated Zelenika's employment— along with the employment of three other employees, including a supervisor, at the same time— for violating that policy.

Zelenika's discharge was the product of an independent Exelon investigation triggered in September 2006 by a complaint brought by Sean O'Malley, one of Zelenika's coworkers. O'Malley reported that OCC employees, not including Zelenika, were using ComEd's electronic information systems to view and exchange pornographic and other offensive material. SOF 34.

---

[3] Since 2000, ComEd has been a subsidiary of Exelon Corporation. *See, Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 367 (7th Cir. 2005).

11

In response, Com Ed assigned Theresa Strayer, an Exelon Human Resources employee whose responsibilities included investigating more than 100 internal complaints of employee misconduct, to investigate O'Malley's complaint. SOF 35. Strayer met with O'Malley, obtained from him the names of eight employees O'Malley said were violating Exelon's electronic assets policies, and launched an investigation that included examining those employees' ComEd email and internet records, which Strayer obtained from Exelon's Information Technology Department.

While the offenders whom O'Malley identified to Strayer did not include Zelenika, when Strayer's investigation disclosed that an employee named by O'Malley had received an inappropriate email from, or forwarded an inappropriate email to, a ComEd employee that O'Malley had not named, Strayer expanded the investigation to include that additional individual. In this way, Strayer's investigation ultimately reached 19 ComEd employees, including Zelenika, whom Strayer found had sent an illicit email to two of the employees O'Malley originally had identified. SOF 36-39.

When Strayer's investigation into O'Malley's complaint was complete, Strayer prepared a spreadsheet listing each of the 19 investigated employees and reflecting, among other things, the number and types of inappropriate materials that she found each had viewed using ComEd's systems, and what she found regarding the extent to which each may have sent such items to others inside or outside the Company. Strayer ranked the inappropriate content she found in the investigation in three categories of offensiveness, the category of greatest offensiveness involving images of full frontal nudity and/or sex acts. Strayer also indicated in her spreadsheet whether each investigated employee had merely received but not forwarded such an item, or had forwarded it but only to a private email account, or (most egregiously) had forwarded it to another ComEd email address. Strayer modeled these categories after categories that she

12

understood Exelon had used in another investigation into the misuse of Company electronic assets at a different Company facility three years earlier. SOF 40-41, 43.

Because Strayer found that Zelenika had forwarded to at least two ComEd email addresses a web link to a streaming video in which a live female "stripper magician" removed all her clothes while facing the camera and ultimately extracted a red handkerchief from her vagina, Strayer's spreadsheet recommended that Zelenika be discharged for forwarding that item of full-frontal nudity within ComEd. SOF 42, 44. Strayer's spreadsheet recommended that two other ComEd Dispatchers plus a Field Operations Supervisor should likewise be discharged for also forwarding similarly egregious items within ComEd. No employee found to have sent an item with full frontal nudity or sex acts within ComEd *escaped* discharge. Two additional employees were recommended for two-week suspensions, and seven more for disciplinary warnings or counseling, for lesser offenses. SOF 44.

There is no question that Strayer conducted an appropriate investigation and constructed reasonable categories of misconduct to differentiate between employees whose inappropriate email and internet usage should, in her judgment, lead to discharge as opposed to lesser discipline. Strayer was not familiar with any of the individuals who were covered in her investigation and had no information about them except what O'Malley alleged and what she found in examining the records of their ComEd email and internet activity. SOF 45. Throughout her investigation and the preparation of her disciplinary recommendations, Strayer did not know that any of the investigated employees had made any complaints about ComEd policies or practices, much less about any ODRISA or other "whistleblowing" complaints like Zelenika claims he made. SOF 45. And ultimately, Strayer's disciplinary recommendations were adopted and implemented wholesale by ComEd, exactly as Strayer proposed them. SOF 52.

13

The pornographic video that Strayer found Zelenika had emailed to his ComEd coworkers clearly warranted his discharge under Exelon's policy and the reasonable criteria Strayer established. No employee whom Strayer found to have sent an equally offensive item by email within ComEd was *not* discharged. Moreover, Zelenika was only one of four employees, including a supervisor, whose discharges were recommended by Strayer and carried out by the Company, and Zelenika does not claim that any of those other employees were whistleblowers. SOF 51. On the other hand, Zelenika contends that there were other OCC Dispatchers, including Plaintiff Raney, who like him *did* complain to OCC supervisors about meal breaks and so forth. But Raney and the others were *not* discharged.

In short, Zelenika has no evidence to substantiate that whistleblowing complaints by Zelenika were the reason for his discharge, or even to create a dispute of material fact regarding ComEd's reason. The undisputed material facts actually preclude him from doing so. Because Zelenika lacks admissible evidence to support indispensable elements of his retaliatory discharge claim, namely, that his having complained about ComEd violations of ODRISA formed the basis for his discharge, it follows that ComEd is entitled to judgment as a matter of law on Count V of the Complaint.

## IV. CONCLUSION

Because Plaintiffs' Dispatcher positions at ComEd clearly qualified for the FLSA and IMWA administrative employee exemptions, ComEd is entitled to judgment on Counts I and II of the Complaint. In any event, the named Plaintiffs may not recover under Count I, and the opt-in Plaintiffs may not participate in Count II. Further, because Zelenika lacks any evidence linking any alleged "whistleblower" complaints to ComEd's decision to discharge him in the

14

OCC pornography investigation, ComEd is entitled to judgment on Count V as well. In short, ComEd is entitled to judgment on all claims remaining in the Complaint.

Respectfully submitted,

COMMONWEALTH EDISON

Date: November 30, 2011     By:   /s/ *J. Stuart Garbutt*
                                                                            One of its attorneys

J. Stuart Garbutt
Meckler Bulger Tilson Marick & Pearson LLP
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel:    312/474-7900
Fax:    312/474-7898
stuart.garbutt@mbtlaw.com

M:\12872\pleading\Summary Judgment\SJ brief final 01.DOC